792 So.2d 892 (2001)
Nicole D. JOHNSON, et al.,
v.
MISSOURI PACIFIC RAILROAD CO. d/b/a Union Pacific Railroad Co., et al.
No. 00-0980-CW.
Court of Appeal of Louisiana, Third Circuit.
July 25, 2001.
*893 David Andrew Fraser, Attorney at Law, Lake Charles, LA, Counsel for Defendants/Applicants: Missouri Pacific Railroad Co. d/b/a Union Pacific Railroad and Nathan Krig.
Elizabeth Sheridan Hardy, Thomas & Hardy, Lake Charles, LA, Kenneth Ray Rush, Attorney at Law, Oakdale, LA, Counsel for Plaintiffs/Respondents: Nicole D. Johnson, Nicholas Johnson, Logan Johnson.
Court composed of SYLVIA R. COOKS, BILLIE COLOMBARO WOODARD, and JIMMIE C. PETERS, Judges.
PETERS, J.
The matter before us is a writ application that has been remanded to this court by the Louisiana Supreme Court for filing of briefs, oral argument, and issuance of an opinion. In the writ application the defendants, Union Pacific Railroad Company *894 (Union Pacific)[1] and Nathan Krig, seek to reverse the trial court's grant of a new trial to the plaintiffs, Nicole and Timothy L. Johnson. For the following reasons, we deny the writ application and remand the matter to the trial court for a new trial.

DISCUSSION OF THE RECORD
The litigation arises from a January 10, 1997 accident involving a vehicle driven by Nicole Johnson and a train owned by Union Pacific and operated by its engineer, Nathan Krig. The lead locomotive pulling the Union Pacific train struck Ms. Johnson's vehicle as she attempted to cross the railroad tracks where they intersect 7th Avenue in Oakdale, Louisiana. Ms. Johnson sustained personal injuries as a result of the accident, as did her two minor children, Nicholas and Logan Johnson. She, together with her husband, Timothy L. Johnson, brought suit against Union Pacific and Mr. Krig to collect for their damages as well as for those of their minor children.
Seventh Avenue runs east and west in Oakdale and intersects the railroad tracks at a ninety degree angle. U.S. Highway 165 runs north and south through Oakdale, lies immediately west of the railroad tracks, and runs parallel to the railroad tracks. Thus, after a person traveling west on 7th Avenue traverses the railroad tracks, he or she immediately encounters the intersection of 7th Avenue and U.S. Highway 165. That intersection is controlled by a red light.
Immediately before the accident, Ms. Johnson was traveling west on 7th Avenue toward the U.S. Highway 165 intersection, and the Union Pacific train was traveling south. Because the control signal at the approaching intersection had cycled to red for traffic approaching on 7th Avenue, Ms. Johnson found herself trapped on the railroad track, unable to go forward or backward. Before she could extricate herself from the tracks, the locomotive pulling the Union Pacific train struck her vehicle. In the initial suit filed January 29, 1997, the plaintiffs asserted that the crossing was unsafe because it lacked adequate warnings and because Union Pacific failed to properly maintain it for the public's safety, and that operator fault and Union Pacific's failure to properly train and supervise its employees were also causation factors in the accident. On May 7, 1998, the plaintiffs supplemented their original petition to assert a cause of action for spoliation of evidence, or Union Pacific's failure to preserve certain evidence. A jury trial on the merits began on June 28, 1999, and ended with a July 6, 1999 verdict favorable to the defendants. The litigation is before us because of a misunderstanding between the trial court and the litigants over objections to the jury instructions.
On Friday, July 2, 1999, the trial court instructed attorneys for the litigants to meet over the weekend and attempt to reach an agreement concerning the text of the final jury instructions. As a guide for the deliberations, the trial court supplied the attorneys with a copy of its proposed instructions which were nothing more than the trial court's standard jury instructions with some modification based on the particulars of a train-vehicle accident. On Tuesday of the next week, the trial court and the attorneys met in conference to discuss the text of the final jury instructions. *895 During the conference, certain modifications were made to the proposed jury instructions. However, although each side had presented proposed special jury instructions for consideration by the trial court, the attorneys did not raise the inclusion or exclusion of these special instructions as an issue at this conference. Immediately after the conference, the trial court charged the jury, using its basic instruction as modified during the conference. Additionally, the trial court supplied the jury with interrogatories to be answered in rendering its verdict, but the verdict interrogatories failed to mention the plaintiffs' cause of action for spoliation of evidence.
After the jury retired to deliberate, the litigants confronted the trial court with a number of objections to the jury instructions. In response to the objections, the trial court made the following statement:
[C]orrect me if [I am] wrong and maybe everyone was under the wrong impression, but I thought that I had instructed the parties to take the charges as proposed, take them back and try to put all of the charges that you could into the-into the instructions and then call to my attention prior to my charging the jury any which you were unable to agree on.
In response, the attorneys for both sides in the litigation informed the court that they misunderstood his directive and thought that they were to reserve their right to object to the trial court's failure to include certain proposed jury instructions. Recognizing that a critical misunderstanding had occurred, the trial court responded as follows:
Well, it was late Friday and I apologize if my directive wasn't clear. I had hoped in our charge conference that we would discuss each and every charge and it was my understanding, the only one that was brought up was train speed. So we'll see what happens. Certainly, I would have considered putting those in the charge, but I guess that will be water under the bridge. All right. Court will be in recess.
The jury deliberated for only a short period of time, and in the early afternoon of July 6, returned a verdict wherein it found Union Pacific and Mr. Krig without fault in causing the accident sued upon. The trial court signed a judgment to this effect on May 2, 2000.
On May 3, 2000, the plaintiffs filed a motion for judgment notwithstanding the verdict (JNOV), and in the alternative, a motion for new trial. Both motions asserted that the trial court erred in not including the proposed jury instructions objected to after the charge conference and in not allowing the jury to even consider their cause of action for the defendants' alleged failure to preserve evidence. At a June 1, 2000 hearing on the motions, the trial court again expressed its dissatisfaction with the situation regarding the jury instructions, denied the motion for JNOV, and granted the motion for new trial.
Union Pacific and Mr. Krig timely applied to this court for a supervisory writ, seeking reversal of the trial court's decision to grant a new trial. In an unpublished opinion, this court denied that application, finding no abuse of discretion on the part of the trial court based on the limited record before us at that time. Johnson v. Missouri Pacific R.R. Co., 00-0980 (La.App. 3 Cir. 8/11/00). The defendants then filed an application for supervisory writ to the supreme court. The supreme court responded to that application by remanding the matter to this court for briefing, argument, and rendering of an opinion. Johnson v. Missouri Pacific R.R. Co., 00-2611 (La.11/27/00); 774 So.2d 987. In response to the supreme court's instructions, this court ordered the production *896 of a complete record of the proceedings in the trial court. We now have a complete record for our review.

OPINION
The exercise of supervisory jurisdiction by an appellate court is within its plenary power. La. Const. art. V, § 10. Appellate courts generally will not exercise such jurisdiction unless an error in the trial court's ruling will cause the petitioner irreparable injury or an ordinary appeal does not afford an adequate remedy. Stevens v. Patterson Menhaden Corp., 191 So.2d 692 (La.App. 1 Cir.1966), writs refused, 250 La. 5, 193 So.2d 524 (1967).
The grant of a new trial may be based on either peremptory grounds or discretionary grounds. La.Code Civ.P. arts. 1972 and 1973. It is the discretionary authority of the trial court that is at issue in this litigation. "A new trial may be granted in any case if there is good ground therefor, except as otherwise provided by law." La.Code Civ.P. art. 1973. "A trial court has virtually unlimited discretion to grant a new trial when it is convinced that a miscarriage of justice has resulted, and, unless an abuse of discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed." Heritage Worldwide, Inc. v. Jimmy Swaggart Ministries, 95-0484, p. 3 (La.App. 1 Cir. 11/16/95); 665 So.2d 523, 526; writ denied, 96-0415 (La.3/29/96); 670 So.2d 1233. See also, Watson v. Nelson, 97-474 (La.App. 3 Cir. 10/29/97); 702 So.2d 1002; writ denied, 97-2958 (La.2/6/98); 709 So.2d 738. Still, "the discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict." Burris v. Wal-Mart Stores, Inc., 940921, p. 6 (La. App. 1 Cir. 3/3/95); 652 So.2d 558, 561, writ denied, 95-0858 (La.5/12/95); 654 So.2d 352.
At the hearing after the jury retired to deliberate, the plaintiffs objected to the exclusion of seventeen of their proposed jury instructions as well as the trial court's refusal to even list the cause of action for the defendants' alleged failure to preserve evidence. The defendants also objected to the exclusion of four of their special jury instructions, but obviously that decision is not at issue before this court since the defendants were the beneficiaries of a favorable jury verdict.
The defendants' principal argument is that the trial court abused its discretion in granting the motion for new trial in that it did so without articulating which specific proposed jury instructions it felt were erroneously excluded from the jury charge. Further, the defendants argue that the trial court did not state that it disagreed with the verdict or that the failure to give the proposed jury instructions resulted in a miscarriage of justice.
At the June 1, 2000 hearing, the trial court granted the motion for new trial and, in doing so, reiterated its concern over the misunderstanding at trial relating to how the jury instruction objections were to be handled:
The Court has reviewed everything. In all candor, the Court was extremely unhappy after I had charged the jury. I know that both attorneys remember. After I had charged the jury and both plaintiff and the defense started putting on their objections to my charge, and the reason for my unhappiness was what I thought were clear instructions, but evidently they were not so clear. I had informed counsel for plaintiff and defense to get together. I believe that it was a year ago this weekend or last weekend, maybe. To get together and try to work through as many of the *897 disagreements as to what the charge should include based on the charges which were on both sides of the case boiler plate jury charges and told them to try to work through the disagreements and give to me a charge which they could both agree on. However, noting to me which charges they were in disagreement with so that I could rule prior to charging the jury. However, because of a misunderstanding, that was not done. The Court has reviewed its charge and the Court finds that the jury was not properly charged in this matter. Therefore, the jury's deliberations were tainted, since they were not based on full instruction. Accordingly, the Court is going to grant the motion for new trial.
When questioned concerning exactly which charges were inappropriate, the trial court made the following comments:
I reviewed the charge and I feel that it was so lacking in-I don't want to go into all of the particulars and maybe they'll send it back to me to do that at a later date. But I felt that it was so lacking that it prevented the jury from doing a meaningful deliberation. And I did that simply because I felt that [you] had agreed on the charge with the exception of one or two that we had discussed in chambers. I guess that I said that I was not going to include them. And then Ms. Hardy put them on the record and then kept going. And I was like, "Wait a minute. I thought that we only had one or two instructions."
The trial court went on to say that "I find that probably half of them should have been included, but I thought that [you] had worked it out and said, `Okay. I will not ask the judge to include this one if you don't ask him to include that one.'" In summarizing all of the problems, the trial court made the following comment:
There was just an inexcusable lack of communication and I guess the buck stops with me in that regard. And I guess you can relay to respective clients that I accept full accountability for what happened because evidently my communication was so lacking that neither one of you understood it. And now that will just result in all of us having to go through a lot more effort and expense in order to try the case again.
The trial court stated that it should have recalled the jury, taken time to organize the jury instructions properly, and recharge the jury. It concluded that its "vanilla charge" was not sufficiently detailed for the evidence presented.
We do not agree with the defendants that the trial court must specifically declare that there has been a miscarriage of justice to grant a new trial pursuant to La.Code Civ.P. art. 1973. "However, ... it is necessary for the trial judge to state an articulable reason or reasons as to why he is exercising his discretionary powers." Burris, 652 So.2d at 561.
In the instant case, the trial court stated that the charges given to the jury were so lacking that they tainted the deliberations and prevented the jury from conducting meaningful deliberations. While the trial court did not particularize which of the proposed instructions should have been included, we do not find such particularization necessary when, as in this case, the trial court recognizes that its "vanilla charge" was not sufficiently detailed to ensure justice to the litigants. If the jury instructions were not sufficient to allow the jury to conduct meaningful deliberations, then clearly the defective charge in general impacted the conclusions reached by the jury in reaching its verdict. A review of the trial record reflects that the liability issues were both complicated and fact intensive. We must agree with *898 the trial court that, while the jury instructions given were accurate, a number of the more specific jury instructions offered by both the plaintiffs and defendants would have assisted the jury in its deliberations.
Equally damaging to the jury's ability to consider all the issues presented was the trial court's failure to allow it to consider the plaintiffs' cause of action for the defendants' alleged failure to preserve evidence. As pointed out in Guillory v. Dillard's Dep't Store, Inc., 00-190, p. 4 (La.App. 3 Cir. 10/12/00); 777 So.2d 1, 3, "our jurisprudence has recognized a person's right to ... a cause of action for the tort of impairment of a civil claim." Additionally, "[i]n some cases, when a plaintiff claims that the ability to institute or prove a civil claim has been impaired due to the negligent or intentional spoliation of evidence by another, courts have addressed the causes of action for impairment of a civil claim and spoliation of evidence as one." Id. at 4.
The plaintiffs specifically asserted that the defendants' failure to preserve evidence in their possession impacted their ability to prove liability, and the record contains a factual basis for that assertion. Less than one month after the accident, the plaintiffs filed suit and began the discovery process. Included within the discovery requests were requests that specific items of evidence be preserved. Additionally, on January 30, 1997, the plaintiffs' counsel wrote Ronald J. Fiorenza, an Alexandria, Louisiana attorney who often represented Union Pacific, and requested that certain items of evidence be preserved. Fiorenza forwarded the letter to Union Pacific's general counsel.
The record establishes that railroad companies are required to maintain certain instruments in their locomotives or on their tracks for the purpose of recording particular forms of data during the operation of the train. Each locomotive is to have an operating event recorder which provides such information as train speed, direction of travel, time, distance, and horn operation. Additionally, audio tape recorders preserve the conversations that transpire internally between the members of the crew as well as between the crew and the company dispatcher. Repair, inspection, and accident reports preserve information which would obviously be helpful in confirming or rejecting conflicts in oral testimony. Despite the repeated requests for preservation and demands for production, Union Pacific failed to produce any of this evidence.
Given the fact that train speed, action or inaction of the train crew, emergency sight distances, and horn operation were all factual disputes critical to the question of liability, a trier of fact could easily conclude that Union Pacific negligently or intentionally failed to preserve this evidence to the detriment of the plaintiffs. The conflicting responses to discovery give credence to this argument as well. Initially, Union Pacific responded to the plaintiffs' discovery requests by asserting that the event recorder did not exist. Later, that response was changed to suggest that, although the event recorder was on the train, no employee present at the accident scene could download the data recorded.
The testimony of the various railroad officials and employees concerning knowledge of the plaintiffs' requests that the evidence be preserved is suspect, particularly when one considers that the documents important to Union Pacific's defense seemed to always be available. Union Pacific's explanation for its failure to produce the evidence ranged from complaints concerning the volume of discovery requests to its difficulties in keeping records because of an ongoing merger with another railroad at the time. Hugh McGehee, Union Pacific's senior claims representative, *899 testified that even where a train had been involved in an accident, maintenance reports would have only been kept thirty days, and all of the other requested data would have been kept no more than 120 days.
At a bench conference held outside the hearing of the jury, the trial court expressed its concern with the defendants' inability to produce the requested evidence. The trial court stated that "it's becoming more and more obvious to the Court that either the railroad is actively engaging in behavior to prevent the discovery of certain evidence or the record keeping is so lacking that it almost rises to the level (interrupted)."

DISPOSITION
Reviewing the record as a whole, we cannot say that the trial court abused its vast discretion in granting the new trial. Therefore, we deny the defendants' application for supervisory writs. We tax all costs of these proceedings to Union Pacific Railroad Company and Nathan Krig.
WRIT DENIED.
NOTES
[1] The original petition named Missouri Pacific Railroad Company, d/b/a Union Pacific Railroad, as one of the defendants. However, the railroad company answered only as Union Pacific Railroad Company, and the litigation has proceeded against that entity only. Therefore, we will refer to the defendant railroad company in this opinion as Union Pacific Railroad Company.