931 So.2d 338 (2006)
Diane T. HORTON
v.
Robert J. MAYEAUX, State Farm Mutual Automobile Insurance Co., and Progressive Security Insurance Company.
No. 2005-CC-1704.
Supreme Court of Louisiana.
May 30, 2006.
*339 Hannah, Colvin & Pipes, Baton Rouge, Janice M.C. Reeves, for applicant.
Steven A. Adams; Porteous, Hainkel & Johnson, Charles L. Chassaignac, IV, Baton Rouge, for respondent.
CALOGERO, Chief Justice.
We granted the writ application filed by defendant, State Farm Mutual Automobile Insurance Co. ("State Farm"), to determine whether the district court exceeded its authority when it ordered a new trial on its own motion, while at the same time refusing to grant a motion for judgment notwithstanding the verdict ("JNOV") filed by plaintiff, Diane T. Horton, a pleading that did not include an alternative motion for new trial. For the reasons set forth below, we find that a district court has authority to order a new trial on its own motion, pursuant to La.Code of Civ. Proc. arts.1971 and 1973, so long as the district court has continuing jurisdiction over the case because a party has filed a motion for new trial and/or a motion for JNOV. Thus, we affirm in this case the district court's decision to order a new trial on its own motion.

FACTS AND PROCEDURAL HISTORY
This case arises out of a January 17, 2002, automobile accident that involved at least four vehicles traveling in the same direction on South Sherwood Forest Boulevard in the City of Baton Rouge. According to Ms. Horton's petition, the accident was caused by the defendant, Robert J. Mayeaux, who failed to yield, causing his 2000 Ford Excursion to strike the back of a stopped 1993 GMC 6000 that then struck Ms. Horton's 1994 Honda Accord and forced her to strike the vehicle preceding hers. As a result of the accident, Ms. Horton claims that she suffered contusions and other trauma, including injury to her spine. Ms. Horton filed suit against Mr. Mayeaux and his liability insurance carrier, State Farm, as well as her uninsured/underinsured motorist ("UM") insurance carrier, Progressive Security Insurance Co. ("Progressive"). Ms. Horton sought damages for past, present, and future physical and mental pain, physical disability, loss of enjoyment of life, medical expenses, loss of income and earning capacity, and other special damages. Ms. Horton also alleged that she was entitled to a jury trial and requested the same.
Prior to trial, the district court granted summary judgment on liability in favor of Ms. Horton. The trial to determine damages was originally scheduled by the district court as the second civil jury trial set for Tuesday, August 17, 2004. However, because of delays caused by the first-scheduled civil jury trial set for the same day, jury selection for Ms. Horton's case was delayed until approximately 4 p.m. on Thursday, August 19, 2004. During the interim, Ms. Horton's claims against her UM insurance carrier, Progressive, were settled and Progressive was dismissed from the suit. Following jury selection and opening statements, the presentation of evidence began at about 7 p.m. on August 19 and continued until approximately 9:30 p.m. The trial reconvened around 9:30 a.m. on Friday, August 20, 2004. The case was submitted to the jury at approximately 5:35 p.m. that day.
At approximately 7 p.m. on August 20, the jury returned a verdict awarding Ms. Horton a total of $37,000 for the following items of damages: $13,000 for past medical expenses, $8,000 for future medical expenses, $15,000 for past physical pain and suffering, and $1,000 for mental anguish and distress. The jury did not make any awards for future physical pain and suffering, *340 loss of enjoyment of life, or disability. The district court signed a judgment in conformity with the jury verdict on Tuesday, August 31, 2004.
On August 27, 2004, several days before the district court signed the written judgment, Ms. Horton filed a motion for JNOV in the district court, pursuant to La.Code of Civ. Proc. art. 1811. Ms. Horton asserted in her motion for JNOV that "reasonable minds could not differ as to the amount of damages based upon the evidence presented." Ms. Horton's motion further stated as follows:
Mover shows that the verdict rendered by the jury in this matter during the late evening hours of Friday, August 20, 2004 was inconsistent in several particulars, namely that full recovery of all medical expenses was permitted, and accepting the treatment and diagnoses pertaining to those expenses as legitimate, the past pain and suffering amount of $15,000.00 and mental anguish and distress award of only $1,000.00 was abusively low; no award was made for loss of enjoyment of life or disability in spite of uncontroverted testimony concerning same and the jury awarded future medical expenses without any future pain and suffering, contrary to the law.
(Emphasis in original.)
A hearing on Ms. Horton's motion for JNOV was held on October 8, 2004, after which the motion was taken under advisement and counsel for both parties were given three days to submit memoranda to the district court. A second hearing was held on February 9, 2005, after which the district court orally refused to grant Ms. Horton's motion for JNOV, but instead ordered a new trial. At the end of the hearing, the district court explained its reasoning as follows:
In this particular instance, if this Court has worked the jury too hard, then that's the error of the trial judge and not the jury. If the trial judge failed to give proper instructions and it visited unfairness to either side, then this court is obligated to correct that error or allow the appellate court to correct that error.
The testimony in this case was essentially unrefuted with respect to liability and several issues of damages, personal injury. The court is very familiar with the standard for JNOV. It's a high standard, viewing the evidence in the light most favorable to the non-moving party, whether or not a rational trier of fact could find.[sic] And applying that to several issues as raised by the moving party in the motion for JNOV, this court could answer in the affirmative.
However, in the interest of justice, the court is of the opinion that there may have been some error committed by the trial court that militated against the petitioner. Therefore, it would be manifestly unjust to uphold the verdict. But the court is not going to grant a JNOV. It will grant a new trial. Judgment to be signed accordingly.
On March 10, 2005, the district court signed a written judgment stating, in pertinent part, as follows:
The Court, after hearing the argument of counsel and considering the law and evidence, for reasons orally expressed, on its own motion hereby orders that a new trial is GRANTED.
The Court does not grant plaintiff's request for judgment notwithstanding the verdict, finding it unnecessary to rule on that motion in light of its new trial ruling.
State Farm sought writs, which were denied by a panel of the court of appeal without reasons, with one judge dissenting, *341 also without reasons. Horton v. Mayeaux, 05-0499 (La.App. 1 Cir. 5/31/05). This court granted State Farm's application for supervisory writs. Horton v. Mayeaux, 05-1704 (La.2/3/06), 922 So.2d 1155.

DISTRICT COURT'S AUTHORITY TO ORDER NEW TRIAL
The primary question herein is whether a district court may order a new trial on its own motion as an alternative to granting a party's motion for JNOV, when the motion did not request a new trial, even in the alternative. The same question was presented to this court in Stuart v. Cooper Tire & Rubber Co., 550 So.2d 641 (La.1989). In that case, a jury had entered a verdict in favor of the defendant, to which the plaintiff responded by filing a motion for JNOV, but not a motion for new trial. See Stuart v. Cooper Tire & Rubber Co., 544 So.2d 78, 79 (La.App. 1st Cir.1989). Following a hearing on the motion for JNOV, the district court took the matter under advisement, then on his own motion ruled both parties into court to show cause why a new trial should not be ordered instead of a JNOV. Id. The district court then entered judgment ordering a new trial and denying the motion for JNOV. Id. The defendant sought writs in the court of appeal, which found no support for the procedure utilized by the district court in any statutory authority or any federal or Louisiana jurisprudence. Id.
The plaintiff sought writs in this court, which summarily granted supervisory writs, stating as follows: "Judgment of the court of appeal is reversed; trial court order for new trial is reinstated." 550 So.2d 641. Justices Marcus and Lemmon stated that they would have granted the writ for argument, while Justices Calogero and Lemmon concurred in the judgment, stating that they "would prefer that this court write an opinion addressing the issue whether a timely motion for a judgment notwithstanding the verdict impliedly includes an alternative motion for a new trial so that the trial court can grant either relief." Id.
In its decision reversing the district court's judgment ordering a new trial in Stuart, the court of appeal cited La.Code of Civ. Proc. art.1971, which provides as follows:
A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only. If a new trial is granted as to less than all parties or issues, the judgment may be held in abeyance as to all parties and issues.
The court of appeal noted in Stuart that La.Code of Civ. Proc. art.1971 is a codification of the jurisprudence authorizing a district court to grant a new trial on its own motion. 544 So.2d at 79. In support of that statement, the court of appeal cited Mitchell, to Use of Tarrt v. Louisiana Industrial Life Ins. Co., 204 La. 855, 16 So.2d 855 (La.1943), in which this court held that, although a district court may order a new trial on its own motion, that action can only be taken within the delay period allowed for filing a motion for new trial, which was three days from the date of judgment at the time Mitchell was decided. Id. at 858, 16 So.2d at 459. Mitchell, in turn, relied on the following statement, quoted from State ex rel. Shreveport Cotton Oil Co. v. Blackman, Judge, 110 La. 266, 34 So. 438 (1903):
So far as granting the new trial was concerned, that might have been done, within the legal delays, by the Judge ex proprio motu. He has, within such delays, such control of the judgment that, if satisfied of an error committed, he may, with or without a formal motion for *342 new trial having been filed by the party cast, direct the judgment he has rendered set aside and a new trial ordered.
Id. at 269, 34 So. 438. See also Iberville Bank & Trust Co. v. Zito, 169 La. 421, 125 So. 435 (La.1929), also cited by the court of appeal in Stuart. This court reached a similar result in Rodrigue v. Ziifle, 288 So.2d 630 (La.1974).
The court of appeal's reliance in Stuart on the Mitchell and Shreveport Cotton Oil cases was misplaced because of an important factual distinction between those cases, on the one hand, and this case and Stuart on the other. In both Mitchell and Shreveport Cotton Oil, and incidentally in Rodrigue, the district court ordered a new trial after the underlying judgment had already become final because the delay for filing a motion for new trial and/or motion for JNOV had passed without any party filing either motion. Once the delay for filing a motion for new trial and/or JNOV has passed, the judgments became final and the appeal delay began. In fact, Subsection (A)(1) of La.Code of Civ. Procedure art. 2087, relative to devolutive appeals, provides specifically that appeals may be taken within 60 days of "the expiration of the delay for applying for a new trial or [JNOV] . . . if no application has been filed timely." Likewise, La.Code of Civ. Proc. art. 2123, relative to suspensive appeals, provides that appeals may be taken within 30 days of "the expiration of the delay for applying for a new trial or [JNOV] . . . if no application has been filed timely." However, when a application for new trial or JNOV has been timely filed, Subsection (A)(2) of both articles provides the delay period begins on the "date of mailing of notice of the court's refusal to grant a timely application for new trial or [JNOV]."
In Stuart, and in this case, the filing of the motion for JNOV effectively interrupted the delay for filing an appeal until after the district court had ruled on the motion. Until that time, the judgment did not become final, meaning that it was subject to modification by the district court judge. Further, the district court had continuing jurisdiction over the case until it had disposed of the timely-filed post trial motion. In effect, the filing of the motion for JNOV held the district court judgment in abeyance until the motion had been ruled upon. See Jabbia v. Sanders, 499 So.2d 1070 (La.App. 3 Cir.), writ denied, 501 So.2d 198 (La.1986). Thus, we find that the district court retained the authority to order a new trial on its own motion at any time prior to disposing of the motion for JNOV filed by Ms. Horton.
Our finding that a district court retains the authority to order a new trial on its own motion, even after the expiration of the delay for filing a motion for new trial, in cases in which one of the parties has filed either a motion for new trial or a motion for JNOV, is consistent with the language of La.Code of Civ. Proc. 1811(B), relative to motions for JNOV, which provides as follows:
If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment and either order a new trial or render a judgment notwithstanding the verdict. If no verdict was returned, the court may render a judgment or order a new trial.
(Emphasis added.) Thus, the Code of Civil Procedure article governing motions for JNOV specifically authorizes district courts to order a new trial in response to a motion for JNOV. Although La.Code of Civ. Proc. Art. 1811(A)(2) allows parties to join a motion for new trial with a motion for JNOV or to pray for a new trial in the alternative in a motion for JNOV, nothing in subsection (B), quoted above, indicates that a district court is prohibited from *343 ordering a new trial if the party seeking the JNOV fails to join a new trial motion or pray for new trial in the alternative. In fact, the language suggests that the ordering of a new trial is always appropriate in response to a party's filing of a motion for JNOV. We therefore find that the district court did not exceed its authority when it ordered a new trial under the circumstances presented by this case.

PROPRIETY OF GRANTING NEW TRIAL IN THIS CASE
Even if the district court had authority to order a new trial under the procedural circumstances of this case, as we have found, State Farm argues that the ordering of the new trial was inappropriate under the substantive circumstances of this case. Specifically, State Farm challenges the district court's reasons for granting the new trial here, asserting that the district court abused its discretion in this case because none of the mandatory reasons for granting a new trial set forth in La.Code of Civ. Proc. art. 1972 support the district court's order in this case. Specifically, citing La.Code of Civ. Proc. art. 1972(1), State Farm claims that the new trial order is inappropriate because the jury verdict was not clearly contrary to the law and the evidence. In support of its argument, State Farm cites this court's recent decision in Martin v. Heritage Manor House, 00-1023 (La.4/3/01), 784 So.2d 627, in which this case quoted and emphasized the following language:
The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility. A motion for new trial solely on the basis of being contrary to the evidence is directed squarely at the accuracy of the jury's factual determinations and must be viewed in that light. Thus, the jury's verdict should not be set aside if it is supportable by any fair interpretation of the evidence.
Id. at 3, 784 So.2d 630-31.
As State Farm acknowledges, the new trial order reviewed by this court in Martin was based solely on the mandatory grounds set forth in La.Code of Civ. Proc. art. 1972. In fact, this court repeatedly emphasized that fact, noting on several occasions that the district court's only stated reason for granting the motion for new trial therein was its finding that the verdict was contrary to the law and evidence under La.Code of Civ. Proc. art. 1972(1). Id. When the district court cited the mandatory provisions of La.Code of Civ. Proc. art. 1972(1) to support its decision to grant the motion for new trial, the district court indicated its belief that it was required to grant the new trial because of the presence of a mandatory ground. On appeal, this court noted that the verdict in Martin was not contrary to the law, and thus focused exclusively on whether the verdict was inconsistent with the evidence. Id. at 3, 784 So.2d at 630. Thus, this court noted, the district court's granting of the motion for new trial "was directed squarely at the accuracy of the jury's factual determinations." Id. at 5, 784 So.2d 631-32
In the instant case, the district court's written judgment states specifically that it is ordering the new trial "on its own motion." Thus, the district court's order in this case was based not on any of the *344 mandatory grounds for granting a motion for new trial set forth in La.Code of Civ. Proc. art. 1972 and discussed in Martin, but rather on discretionary grounds, as allowed by La.Code of Civ. Proc. Art. 1973. Under the express terms of that provision, "[a] new trial may be granted in any case if there is good ground therefore, except as otherwise provided by law." (Emphasis added.) La.Code of Civ. Proc. art. 1973 allows a district court to use its discretion to order a new trial whenever it is "convinced by [its] examination of the facts that the judgment would result in a miscarriage of justice." Lamb v. Lamb, 430 So.2d 51, 53 (La.1983) In fact, Louisiana courts have traditionally held that, when a district court is convinced that a miscarriage of justice has occurred, it has "virtually unlimited discretion to grant a new trial," and, "unless an abuse of discretion can be demonstrated, a trial court's action in granting or denying a new trial on discretionary grounds will not be reversed." See, e.g., Johnson v. Missouri Pacific R.R. Co., 00-0980 (La.App. 3 Cir. 7/25/01), 792 So.2d 892; Capitol Nursing Home, Inc. v. Nixon, 99-0378 (La.App. 1 Cir. 3/31/00), 764 So.2d 1016, and cases cited therein. Generally, the only requirement has been that the district court "state an articulable reason or reasons as to why he is exercising his discretionary powers." Burris v. Wal-Mart Stores, Inc., 652 So.2d 558, 562 (La.App. 1 Cir.), writ denied, 654 So.2d 562 (La.1995).
In this case, the district court stated just such "an articulable reason or reasons as to why he is exercising his discretionary powers." Id. In ordering the new trial, the district court indicated that it was convinced, because of the circumstances surrounding the trial, that the judgment would result in a miscarriage of justice. In so finding, the district court specifically tracked this court's statement in Lamb that a district court's finding that upholding the jury's verdict would result in manifest injustice is a "good ground" for granting a new trial on the court's own motion, as allowed by La.Code of Civ. Proc. art. 1973. Further, the district court's finding in this case that manifest injustice would result from upholding the jury verdict is supported by the trial record itself, as the court repeatedly admonished counsel to hurry because of the late hour and stated that the jury had been "pushed to the max." It is also undisputed that questioning of one of plaintiff's doctors concluded at 9:30 p.m.30 minutes after the air conditioning system shut down on a late August night in Baton Rouge, Louisiana. Under the circumstances, we find no abuse of the district court's discretion to order a new trial on her own motion.
Our decision in this case is not intended to call into question the stricter standards for reviewing the granting of a motion for new trial on mandatory grounds set forth in the Martin case. As previously noted, the district court's breadth of discretion to order a new trial "varies with the facts and circumstances of each case." Martin, 00-123 at 7, 784 So.2d at 632. That being the case, our decision herein is based on the fact that the discretionary grounds for ordering the new trial on a district court's own motion under La.Code of Civ. Proc. art. 1973 differ substantially from the mandatory grounds for granting a motion for new trial under La.Code of Civ. Proc. 1972, and particularly from the grounds for granting a mandatory motion for new trial based on the district court's finding that the verdict is contrary to the evidence. As such, different considerations must be applied when appellate courts review the different types of judgments granting new trials. Further, when a mandatory new trial has been granted on the district court's finding that the verdict is contrary to the evidence, the possibility *345 that the district court has usurped the jury's fact finding role is a major concern. When a district court grants a mandatory motion for new trial on the grounds that the verdict is contrary to the law and/or the evidence, it is indicating its belief that it must grant the motion because of some failing on the part of the jury to properly apply the law or the facts.
On the other hand, when a district court orders a new trial on its own motion because it is concerned that the judgment will result in substantial injustice, its decision does not undermine the jury's factfinding function. Rather, ordering a new trial on discretionary grounds is more likely to indicate, as it does in this case, that the district court is concerned about some failing on its own part to conduct the trial in a manner that assures that justice has been done. In such a situation, the district court is in a much better position to determine whether the circumstances under which the trial was conducted were appropriate. Thus, Louisiana courts have developed the traditional rule that the district court has virtually unlimited discretion to order a new trial on its own motion for discretionary grounds, so long as "good grounds" for doing so exist. Applying that rule to this case, we find no abuse of the district court's great discretion. Accordingly, the judgment ordering the new trial is affirmed.

DECREE
The district court judgment ordering a new trial in this case is affirmed. The case is remanded to the district court for further proceedings consistent with this decision.
AFFIRMED AND REMANDED.
VICTORY and WEIMER, JJ., dissent and assign reasons.
TRAYLOR, J., dissents for reasons assigned by WEIMER, J.
VICTORY, J., dissenting.
I dissent from the majority opinion in this matter for the same reasons expressed by Justice Weimer. Further, I strongly disagree with the majority's conclusion that "the ordering of a new trial is always appropriate in response to a party's filing of a motion for JNOV."
While a trial judge does have the discretionary authority to grant a new trial on his or her own motion, this "discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitle to the benefits of a favorable jury verdict." Martin v. Heritage Manor House, 03-1023 (La.4/3/01), 784 So.2d 627. Further, "[a] trial court has no authority to grant a new trial, or to recall, modify, or set aside a judgment once the delay for filing a motion for new trial has passed, unless one of the parties has filed a timely motion." Steven R. Plotkin, Louisiana Civil Procedure, Art. 1974, p. 346 (citing South Louisiana Bank v. White, 577 So.2d 349 (La.App. 1 Cir. 1991); Texas Eastern Transmission Corp. v. Cahanin, 343 So.2d 415 (La.App. 3 Cir. 1977)). As recognized by the majority, this Court in Mitchell, to the Use of Tartt v. Louisiana Industrial Life Ins. Co., 204 La. 855, 16 So.2d 855 (1943), has previously held that although a trial court may order a new trial on its own motion, that action can only be taken within the delay period allowed for filing a motion for new trial.
To hold that a timely motion for JNOV impliedly includes an alternative motion for new trial, and that consequently, the court can order a new trial on its own motion in favor of any party or on any issue, even if not raised by the party filing the motion for JNOV, and at any time as long as it is during the time period when *346 the JNOV motion is pending, is not only judicial legislation, but is also patently unjust. There are many reasons why a party may chose to only file a motion for JNOV without filing the alternatively available motion for new trial. For instance, the verdict as it stands, even if not completely satisfactory to the party filing the motion for JNOV, might be far preferable to running the risk of a new trial with a less favorable outcome. Similarly, even in ruling on the JNOV motion, the trial court can only modify the trial court judgment as it relates to those issues raised by the party filing the motion, and the trial judge may not change the verdict in a manner which favors a party which has not filed a motion for JNOV. See Plotkin, supra at p. 189.
Contrary to the language in La. C.C.P. art. 1811(A) that a party filing a motion for JNOV may join with it a motion for new trial or may pray for a new trial in the alternative to filing a motion for JNOV, parties should beware that according to the majority opinion, the filing of a motion for JNOV now automatically includes a motion for new trial, and they should think twice before filing one.
For the above reasons, and for the reasons expressed by Justice Weimer, I respectfully dissent.
WEIMER, J., dissenting.
Although I agree the district court had authority to order a new trial under the procedural circumstances of this case, I believe the new trial was inappropriate under the substantive circumstances of this case.
Much of this court's recent statement in Martin v. Heritage Manor House, XXXX-XXXX, (La.4/3/01), 784 So.2d 627, quoted by the majority, applies to the discretionary ground of Louisiana Code of Civil Procedure Article 1973.
The fact that a determination on a motion for new trial involves judicial discretion, however, does not imply that the trial court can freely interfere with any verdict with which it disagrees. The discretionary power to grant a new trial must be exercised with considerable caution, for a successful litigant is entitled to the benefits of a favorable jury verdict. Fact[-]finding is the province of the jury, and the trial court must not overstep its duty in overseeing the administration of justice and unnecessarily usurp the jury's responsibility.
Martin, XXXX-XXXX at 3, 784 So.2d at 630, quoting from Gibson v. Bossier City General Hospital, 594 So.2d 1332, 1336 (La. App. 2 Cir.1991).
Although a district court has virtually unlimited discretion to grant a new trial that discretion does have limitations. See Horton v. Mayeaux, XXXX-XXXX, at p. 344 (La.5/30/06). As the majority notes, the district court should "state an articulable reason or reasons as to why [it] is exercising [its] discretionary powers" in granting a new trial. Burris v. Walmart Stores, Inc., 652 So.2d 558, 562 (La.App. 1 Cir.) writ denied, 654 So.2d 3352 (La.1995) cited in Horton, at p. 344. The trial court only tentatively indicated the jury may have worked too hard in this matter: "In this particular instance, if this Court has worked the jury too hard, then that's the error of the trial judge and not the jury." However, testimony only lasted two and a half hours on the first day of trial. When asked by the trial court if they preferred to start at 9:30 a.m. or 10:00 a.m., the jury voted to start the next day at 9:30 a.m. Then, on the second day of this two-day trial, they worked a full day from 9:30 a.m. to 5:30 p.m.
This was not an especially complicated case. I note the jury deliberated for approximately *347 an hour and a half, indicating they did not summarily resolve the case. Juries often work hard and stay late. It sets a dangerous precedent to nullify a jury verdict on the basis of this record. I would find an abuse of discretion in granting a new trial which neither party requested.