| | | |
|---|---|---|
| TAMMY MARTINEZ | * | NO. 2024-C-0445 |
| VERSUS | * | |
| | | COURT OF APPEAL |
| LG ELECTRONICS U.S.A., | * | |
| INC., LG ELECTRONICS | | FOURTH CIRCUIT |
| ALABAMA, INC., AND HOME | * | |
| DEPOT U.S.A. | | STATE OF LOUISIANA |

* * * * * * *

APPLICATION FOR WRITS DIRECTED TO
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 18-0962, DIVISION "B"
Honorable Jeanne Nunez Juneau, Judge
* * * * * *
**Judge Rosemary Ledet**
* * * * * *

(Court composed of Judge Rosemary Ledet, Judge Paula A. Brown, Judge Dale N. Atkins)

B. Adam Hays
Vikram S. Bhatia
MG+M THE LAW FIRM
365 Canal Street, Suite 3000
New Orleans, Louisiana 70130

David R. Frohn
MG+M THE LAW FIRM
3729 Cobblestone Drive
Lake Charles, LA 70605-2570

Joseph L. McReynolds
Raymond C. Lewis
DEUTSCH KERRIGAN, L.L.P.
755 Magazine Street
New Orleans, Louisiana 70130

      COUNSEL FOR RELATORS/DEFENDANTS—LG ELECTRONICS
      U.S.A., INC.; LG ELECTRONICS ALABAMA, INC.; AND HOME
      DEPOT U.S.A.

Paul Addison Lea, Jr.
PAUL A. LEA, JR., APLC
229 N. Bermont Street
Covington, LA 70433

COUNSEL FOR RESPONDENT/PLAINTIFF—TAMMY MARTINEZ

**WRIT GRANTED; JUDGMENT REVERSED; JURY VERDICT REINSTATED; STAY LIFTED**
**August 2, 2024**

*RML*

*PAB*

*DNA*

This is a redhibition suit arising out of a house fire. Relator—Tammy Martinez—was the homeowner. Ms. Martinez sued Respondents—LG Electronics U.S.A., Inc.; LG Electronics Alabama, Inc.; and Home Depot U.S.A. ("collectively LG")—alleging a defective LG Window Aircondition Unit (the "Unit") caused the fire. Following a two-day jury trial, a verdict was rendered in LG's favor. Ms. Martinez filed post-trial motions, including a motion for new trial ("MNT"). On May 30, 2024, the trial court rendered a judgment granting the MNT. From that judgment, LG seeks supervisory review. For the reasons that follow, we grant LG's writ, reverse the trial court's judgment, and reinstate the jury's verdict. The stay order granted by this Court is lifted.

**FACTUAL AND PROCEDURAL BACKGROUND**

In July 2017, Ms. Martinez purchased the Unit from Home Depot. Shortly thereafter, she installed the Unit in the dormer window of the upstairs master bedroom of her house located in Meraux, Louisiana. A few days later, a fire broke out in her house. Ms. Martinez's neighbor–A.J. Rinkus ("Mr. Rinkus")—noticed the fire and called the St. Bernard Fire Department (the "Fire Department"). According to Mr. Rinkus, the smoke from the fire was coming from the Unit. The

1

Fire Department determined that the area of origin of the fire was the dormer window of the upstairs master bedroom where the Unit was located. But, the Fire Department was unable to determine the cause and origin of the fire. At the time of the fire, Ms. Martinez was not home. Although someone else was home, no one was injured in the fire.

Thereafter, Ms. Martinez commenced this redhibition suit against LG. In her petition, she averred that she purchased the Unit on July 9, 2017; that she installed the Unit on July 11, 2017; and that the Unit caused the fire that occurred on July 14, 2017. She further averred that "[w]itnesses who observed that [sic] the fire stated that the fire started in said window unit and then spread to the rest of the dwelling, a fact confirmed by fire investigators." She still further averred that the Unit had a redhibitory defect.

A jury trial was held on October 17-18, 2023. At trial, each side called two witnesses. Ms. Martinez called herself and her expert, Ted Kaplon (an electrical engineer); LG called its expert, James Miller (a mechanical and an industrial engineer)[1] and Chad Ricks (an insurance claims adjuster). The parties submitted the video depositions of two witnesses: Charles Licciardi, Jr. ("Chief Licciardi") (the Fire Department's Assistant Chief) and Mr. Rinkus (Ms. Martinez's neighbor).

In her written reasons for the May 30, 2024 judgment, the trial court summarized the pertinent facts to the MNT—the testimony of Mr. Kaplon and Mr. Licciardi—as follows:

> Mr. Kaplon [a registered professional engineer] testified that he was the first person to investigate the scene of the instant fire other than the fire

[1] In its writ application, LG argues that the trial court improperly sustained Ms. Martinez's untimely objection—raised for the first time at trial—to the qualifications of LG's expert fire investigator, Mr. Miller. Because we find merit to LG's other argument that the trial court improperly granted Ms. Martinez's MNT, we pretermit this issue.

department. He opined that the fire originated in the upstairs master bedroom at the east window alcove with a plausible cause as undetermined electrical failure in the LG A/C. Thereafter, he conducted a further examination of the unit and added that the fire "clearly started inside [the LG Unit]. Physical evidence of the localized damage to a printed circuit board inside the unit clearly demonstrated that the fire originated inside the unit rather than its damage being a result of the fire external to the unit." Mr. Kaplon stated that in his expert opinion the fire started "inside the LG A/C. There was not enough physical evidence to indemnify a specific electrical cause of the fire, but the origin of the fire is clearly inside the unit."

The jury viewed testimony of St. Bernard Parish Fire Department Assistant Fire Department Chief Charles Licciardi, Jr. Mr. Licciardi testified that his role in the instant matter was Fire Department Investigator. He opined that the origin of the fire was in the window area of a room on the second floor. He stated that when he arrived to investigate the window had already been removed and was on the front lawn. When questioned about whether he saw any other electrical equipment in the area, he noted "[a]ccording to my report, and from what I can remember, there are other things. I think it was—it was kind of used as a, maybe an office, little section of the room, if I can remember correctly. So they had some computer equipment there as well." In response to questioning about the cause of the fire, Assistant Chief Licciardi responded "Undetermined. I couldn't make a determination of what caused the fire." He went on to state "So do I know that the fire originated because of the A/C unit? No. Was it in the area where I'm confident that the fire started? Yes." When asked: "Q: Is your opinion that the source of the fire or cause of the fire could not be determined? A: By me, yes sir, yes. Yes. Sir." He later stated, "I was not able to determine that the equipment actually caused the fire."

At the close of Ms. Martinez's case, LG moved for a directed verdict. LG argued that Ms. Martinez failed to show a defect in the Unit. LG emphasized that Mr. Kaplon was asked whether he could point to a specific defect in the Unit, and he could not. Thus, LG contends that Ms. Martinez's redhibition claim should be dismissed. The trial court denied the motion.

At the close of the trial, the jury rendered a verdict in LG's favor. In so doing, the jury answered the jury interrogatory on the jury verdict form as follows:

Interrogatory No. 1: Is it more likely than not that LG aircondion unit in question was the source of the fire and therefore defective?

[Jury's Answer:] No.

The trial court entered a judgment in accordance with the jury's verdict, dismissing Ms. Martinez's claims against LG.

In response, Ms. Martinez filed post-trial motions for judgment notwithstanding the verdict ("JNOV") and, in the alternative, MNT. Ms. Martinez contended that LG failed to present any evidence that the fire started anywhere other than the Unit and that she was able to demonstrate through Mr. Rinkus' eyewitness testimony, through circumstantial evidence, and through Mr. Kaplon's direct, professional engineering testimony, that the Unit was the cause of the fire. The trial court denied the JNOV motion, finding that "reasonable and fair-minded men in the exercise of impartial judgment may reach different conclusions in regard to [the] cause of the fire." But, the trial court granted the MNT. This writ followed.

## DISCUSSION

The trial court granted Ms. Martinez's MNT based on the discretionary ground codified in La. C.C.P. art. 1973, which provides that "[a] new trial may be granted in any case if there is good ground thereof, except as otherwise provided by law." The pertinent jurisprudential principles governing a MNT under La. C.C.P. art. 1973 include the following:

- A trial court's discretion in ruling on a MNT is great; its decision will not be disturbed on appeal absent an abuse of that discretion. *Davis v. Wal-Mart Stores, Inc.*, 00-0445, p. 10 (La. 11/28/00), 774 So.2d 84, 93.

- The fact that a determination on a MNT involves judicial discretion does not imply that a trial court can freely interfere with any verdict with which it disagrees. *Guillory v. Lee*, 09-0075, p. 38 (La. 6/26/09), 16 So.3d 1104, 1131. The discretion by which a trial court has to grant a new trial must necessarily be tempered by the court's respect of—and obligation not to usurp the fact finding responsibility of—the jury. *Martin v. Heritage Manor S. Nursing Home*, 00-1023, p. 3 (La. 4/3/01), 784 So.2d 627, 630. A trial court must

4

cautiously exercise the discretionary power to grant a new trial because "a successful litigant is entitled to the benefits of a favorable jury verdict." *Id.* (internal citations and quotations omitted).

- "The breadth of the trial court's discretion to order a new trial varies with the facts and circumstances of each case." *Myles v. Hosp. Serv. Dist. No. 1 of Tangipahoa Parish*, 17-1014, p. 20 (La. App. 1 Cir. 4/6/18), 248 So.3d 545, 561. A proper application of La.C.C.P. art. 1973 requires an examination of the facts and circumstances of the individual case. *Lamb v. Lamb*, 430 So.2d 51, 53 (La. 1983).

- When a trial court is convinced by its examination of the facts that the judgment would result in a miscarriage of justice, a new trial should be ordered pursuant to La. C.C.P. art. 1973. *See Horton v. Mayeaux*, 05-1704, pp. 9-10 (La. 5/30/06), 931 So.2d 338, 344 (citations omitted). But, the granting of a new trial cannot be used to provide a losing party a second bite at the apple absent facts establishing that otherwise a miscarriage of justice would occur. *In re Gramercy Plant Explosion at Kaiser*, 04-1151 to 1191, p. 17 (La. App. 5 Cir. 3/28/06), 927 So.2d 492, 502.

- The Louisiana Supreme Court has consistently found that jury confusion constitutes a good ground for granting of a new trial. *Napoleon v. LAMMICO*, 22-0667, p. 2 (La. App. 4 Cir. 12/1/22), 2022 WL 19008502 (*unpub.*) (citing *Pitts v. Louisiana Med. Mut. Ins. Co.*, 16-1232 (La. 3/15/17), 218 So. 3d 58; *Warren v. Shelter Mut. Ins. Co.*, 16-1647 (La. 10/18/17), 233 So. 3d 568), *writ denied*, 23-00012 (La. 3/7/23), 357 So.3d 320.

- But, "the confusion had to be substantial enough to mislead the jury 'to the extent that it was prevented from dispensing justice.'" *Provosty v. Arc Constr., LLC*, 15-1219, p. 7 (La. App. 4 Cir. 11/2/16), 204 So.3d 623, 628 (citation omitted). "[I]t must appear that the jury's confusion was unreasonable and a clear illustration of its failure to impartially apply the reasoning faculty on the facts before it." 66 C.J.S. §107.

- "[O]rdering a new trial on discretionary grounds is more likely to indicate . . . that the district court is concerned about some failing on its own part to conduct the trial in a manner that assures that justice has been done." *Horton*, 05-1704, pp. 11-12, 931 So.2d at 345.

- In granting a new trial, it is necessary for the trial court to state an articulable reason (or reasons) as to why the trial court is exercising its discretionary powers under La. C.C.P. art. 1973. *Horton*, 05-1704, p. 10, 931 So.2d at 344.

Here, the trial court stated articulable reasons for granting the new trial

under La. C.C.P. art 1973. The trial court stated that it was granting the MNT

because it found jury confusion warranted a new trial. In particular, it cited the

following three reasons it believed established jury confusion: (i) Chief Licciardi's limited investigation for arson; (ii) Mr. Kaplon's uncontradicted expert testimony; and (iii) Mr. Rinkus' eyewitness testimony. In the written reasons for the May 30, 2024 judgment, the trial court observed as follows:

- "Chief Licciardi did not collect evidence at the scene to determine the cause and origin of the fire. His role as he testified was to determine whether the fire was set intentionally or not."[2]

- "[T]he only cause and origin expert, Ted Kaplon, testified in this matter and his expert testimony remains uncontroverted. Mr. Kaplon testified that the fire started inside the LG air conditioning unit."

- "[T]he only eyewitness, [Mr.] Rinkus, testified in his video deposition that flames were coming out of the A/C unit."

Based on these three reasons, the trial court concluded that a new trial was required to avoid a miscarriage of justice.

---

[2] The trial court further articulated, as to Chief Licciardi, the following:

It is clear to this Court that the jury erroneously relied on Assistant Chief Charles Licciardi, Jr.'s testimony when determining that the LG Air Conditioning Unit was not the source of the fire. Chief Licciardi's testimony was compelling. [LG] displayed Chief Licciardi's photograph on the screen in his formal St. Bernard Fire Department uniform. His title and position presented as commanding and authoritative to the jury. When Chief Licciardi testified that he was not able to determine that the equipment actually caused the fire, the jury made facial expressions and there were grumblings amongst the jurors that was noted by the Court.

However, the Court finds the jury misinterpreted Chief Licciardi's testimony and ignored a crucial element of his testimony. Chief Licciardi testified: "So typically for the fire department, as a fire department investigator, we would obviously try to determine the area of origin as much as possible, and the source if we could. However, the general—well, the biggest component of that investigation is to try to figure out if it maybe was intentionally set or not intentionally set. If we feel like it was intentionally set, which accelerants in the area could indicate, you know, then we would call in additional resources and such. If I don't feel like it was intentionally set, you know, I wouldn't call in additional resources. I would do my best on the scene to determine what I could, you know. But of course we're not collecting evidence and not being an engineer and doing any testing after that point. So I guess to answer your question, you're correct. The main thing that we do on the scene is to try to figure out if it was an intentionally set fire or not an intentionally set fire." He went on to state that he has not ruled out the A/C unit as the source.

In its writ application, LG contends that the trial court erred in finding a miscarriage of justice, warranting the grant of the MNT. Conversely, Ms. Martinez, in her opposition, contends that a miscarriage of justice would occur in the absence of upholding the trial court's grant of the MNT. Tracking the trial court, Ms. Martinez cites the following three reasons as supporting the trial court's judgment: (i) Chief Liccardi's testimony that his investigation was limited to arson; (ii) Mr. Kaplon's uncontradicted expert testimony that the origin of the fire was from within the Unit; and (ii) Mr. Rinkus' eyewitness testimony that he saw flames coming from the Unit. We find none of the three cited reasons is sufficient alone, or taken together, to establish a miscarriage of justice, which is required to grant a new trial. Although the reasons somewhat overlap, we separately address each of them.

**Chief Licciardi's Limited Investigation For Arson**

In his video deposition, Chief Licciardi testified that he was the Fire Department's investigator for the fire. In his deposition, Ms. Martinez's attorney raised the issue of whether Chief Licciardi's investigation was limited to arson. Her attorney posed the question whether Chief Licciardi would investigate until he found "the absolute source of the fire or [whether] is it [his] normal course of business to ensure it's not an accelerant or an arson matter." In response, Chief Licciardi testified that the biggest component of his investigation is to try to figure out if the fire was maybe "intentionally set or not intentionally set." Nonetheless, Chief Licciardi explained that there was more to his investigation than determining whether arson was involved. Chief Licciardi testified that he was on the scene on

the day of the fire, and he explained what he observed. The jury could consider Chief Licciardi's testimony regarding his investigation, including his inability to determine a cause and origin for the fire. Another relevant factor regarding Chief Licciardi's testimony, as LG emphasizes, is that Chief Licciardi was the only independent witness on the cause and origin issue. The jury likewise could consider this factor.

**Mr. Kaplon's Uncontradicted Expert Testimony**

The trial court, accepting Ms. Martinez's contention, found that Mr. Kaplon's expert testimony, as an electrical engineer, was uncontradicted. Even assuming that finding was correct, the jury was not required to accept Mr. Kaplon's testimony. As this Court has observed, "[e]ven uncontradicted expert testimony is not binding on the factfinder." *Hansel v. Holyfield*, 00-0062, p. 16 (La. App. 4 Cir. 12/27/00), 779 So.2d 939, 949 (citation omitted). Rather, "[t]he factfinder has discretion to accept or reject expert testimony and to determine the amount of weight it may be due, which is largely dependent upon the expert's qualifications and the facts upon which their opinions are based." *Breaux v. Woods*, 20-161, p. 4 (La. App. 3 Cir. 11/18/20), 307 So.3d 395, 400 (citation omitted).

The record reflects that Mr. Kaplon prepared two reports in the case—one in 2017, and another in 2021. His first report was for the adjusting firm retained by Ms. Martinez's homeowner's insurer. Mr. Kaplon's 2017 report, prepared for the adjusting firm, concluded that it was only plausible that the cause of the fire was an undetermined electrical failure in the Unit. Thereafter, Mr. Kaplon was retained by Ms. Martinez's attorney. In his 2021 report, while retained by Ms. Martinez's attorney, Mr. Kaplon's opinion changed from plausible to "physical evidence

8

consistent with and indicative of the fire originating inside the AC." The jury could consider Mr. Kaplon's change of opinion as well as his affiliation with Ms. Martinez's attorney.

Moreover, LG cites to several deficiencies in Mr. Kaplon's investigation of the fire, including his failure to notify LG when he initially commenced his investigation. LG emphasizes that NFPA protocol specifically recommends that all interested parties be at the fire scene from the beginning of an investigation. According to LG, another deficiency was that there were fire-damaged items at the scene that Mr. Kaplon failed to collect. The jury could take these deficiencies into consideration. Hence, even if uncontradicted, Mr. Kaplon's testimony was not dispositive.

**Mr. Rinkus' Eyewitness Testimony**

In his video deposition, Mr. Rinkus testified that, while checking his mail, he noticed that flames were coming out the side of the Unit and that it started to catch the house on fire. He further testified that he believed the Unit was operating at the time of fire. But, Mr. Kaplon testified that the Unit has two fans—one pushing hot air out the back and the other blowing cool air into the room. For this reason, Mr. Kaplon explained that smoke could have been coming out of the Unit even if the fire started inside the room rather than in the Unit. Mr. Rinkus' testimony, thus, did not dictate a finding that the Unit was a cause of the fire.

Recapping, even assuming Mr. Kaplon's testimony was uncontradicted, the jury was not required to accept it. Chief Licciardi's investigation, albeit focused on arson, was not limited thereto. Finally, Mr. Rinkus' testimony that he saw smoke coming from the Unit is not dispositive of the origin of the fire. None of the three factors, alone or taken together, supports the trial court's finding that a miscarriage

9

of justice would result if it failed to grant a new trial. We, thus, find the trial court abused its discretion in granting Ms. Martinez's MNT.

## CONCLUSION

For the foregoing reasons, we grant LG's writ, reverse the trial court's May 30, 2024 judgment, and reinstate the jury verdict. The stay order granted by this Court is lifted.

**WRIT GRANTED; JUDGMENT REVERSED; JURY VERDICT REINSTATED; STAY LIFTED**